**People of the State of Illinois, Plaintiff-Appellee, v. George Wells, Defendant-Appellant.**

**Gen. No. 66–48.**

Fifth District.

February 28, 1967.

George Ginos, of Hillsboro, for appellant.

Otto E. Funk, State's Attorney, of Hillsboro, for appellee.

GOLDENHERSH, J.

Defendant appeals from the judgment of the Circuit Court of Montgomery County entered on a jury verdict finding him guilty of the offense of Disorderly Conduct, (c 38, § 26–1, Ill Rev Stats 1965). The court fined defendant $250 and ordered him to pay the costs of court.

The complaint charges that on June 10, 1965, at approximately 1:00 a. m., defendant committed the offense of Disorderly Conduct in that he knowingly, with intent to annoy William F. Whitnel, made a telephone call to his home, but had no conversation with him, in that he hung up the telephone immediately upon hearing Whitnel's voice.

Defendant argues as grounds for reversal (a) the trial court erred in admitting evidence of prior occurrences similar to that charged in the complaint (b) the court erroneously permitted a supervisor for the telephone company to testify as to certain matters, and (c) erred further in not permitting defendant's counsel to interrogate his character witnesses as to defendant's reputation for "peacefulness and quietude." Finally, defendant contends that the evidence fails to establish defendant's guilt beyond a reasonable doubt, and there is a variance between the charge set forth in the complaint, and the evidence.

William F. Whitnel testified that he lived in Litchfield and for four years had been Superintendent of Unit 12 Schools. He had known defendant for approximately 7 years. Defendant is employed by Unit 12 as a Junior High School teacher, and also operates a cafe in Litchfield. He had discussed with defendant his absence from his teaching duties, during part of which defendant was on sick leave, but was not ill, and was working in his cafe. They had also discussed an extension course which defendant planned to take to meet the requirements of the Board of Education for "professional growth." A day's pay was deducted from defendant's salary because of his failure to attend a Teacher's Institute. Whitnel stated that he had received a report that defendant had discussed the deduction with the County Superintendent of Schools but he did not know the result of that conversation. On one occasion he had written defendant regarding his failure to comply with a School Board rule that he be at school at 8:00 a. m.

Over objection, the witness testified that in the preceding 6 months approximately 15 telephone calls had been made to his home, usually between 11:30 p. m. and 2:00 a. m., and when the telephone was answered, there was no one on the other end of the line. He kept no record of the calls except three which were made on

189

June 8, 9, and 10, 1965. The usual pattern was that he or his wife would be awakened by the ring of the telephone, would answer, and hear a click. There was no conversation at any time.

On June 8, 1965, at 1:40 a. m. the telephone rang, Mrs. Whitnel answered, no conversation ensued, and on that afternoon, after Whitnel talked with the Chief of Police of Litchfield, a monitoring device was placed on the telephone in the Whitnel home.

The next morning at 1:15 a. m., the phone rang, Whitnel answered, and heard the click at the other end of the line. In accordance with instructions received from Mr. Gary Clifton, manager of the telephone company, he left the phone off the hook. Later that morning he saw Mr. Clifton and the Chief of Police, and then put the phone back on the hook.

The next morning, June 10, 1965, at about 1:00 a. m., there was a similar occurrence. Whitnel went to the police station, and a patrolman and he drove past defendant's cafe. He saw defendant stooping down in front of a stool. They drove past the place, turned around and passed it a second time, and he again saw defendant in the place. It was then 1:07 and defendant's place of business was closed. Later, about 1:45 a. m. the phone in Whitnel's home buzzed again, "as if it were trying to ring." He saw the State's Attorney and signed a complaint.

Gary Clifton, commercial manager of the telephone company at Litchfield, testified that he authorized the attachment of a monitoring device to Whitnel's line. He explained that while this device is attached it makes the called number the controlling party, and so long as the phone to which the call was made is off the hook, the phone from which the call is made is tied up. He supervised the technician who traced the calls of June 9 and 10, 1965, to George's Cafe, where the phone is listed in defendant's name.

Defendant objected to the testimony with respect to the tracing of the calls on the grounds that the witness had no personal knowledge of the result of the tracing operation, the testimony was hearsay, and no reason was shown why the technician who did the actual tracing was not present in court.

Mrs. Whitnel testified that the calls were received, and a patrolman testified that on the morning of June 10 he and Whitnel drove past defendant's place of business and the lights were on.

Defendant testified that he called Whitnel's home late on the night of June 9, 1965, to discuss with him approval of a correspondence course he intended to take. He was unable to fix the time, except that it was later than 10:00 p. m., the closing time of his business. He heard 5 or 6 rings, and when there was no answer, he hung up.

■ Defendant argues as a ground for reversal that the court erred in admitting, over objection, the testimony of Mr. and Mrs. Whitnel, that calls had been received over a period of time commencing about January 1, 1965. Defendant concedes that evidence of unrelated offenses may be admissible to prove design, motive or knowledge (People v. Brown, 26 Ill2d 308, 186 NE2d 321), but that in the cases which so hold, it was proved that the defendant was the perpetrator of the other offenses, whereas here no effort was made to connect the defendant with any call except those of June 9 and 10, 1965.

In Volume 2 of Wigmore on Evidence (Third Edition) at page 201 is found a discussion of what the author calls "anonymous intent." He points out that evidence of previous occurrence of the same or similar things may be admitted to negative innocent intent, accident or inadvertence. Thus in State v. Huffman, 69 W Va 770, 73 SE 292, in a trial on a charge of arson, evidence was admitted to show other fires suffered by the owner of

the property burned, though not traced to the defendant, as bearing on the issue of whether the fire upon which the charge was based was accidental, or the work of an incendiary.

An example more similar to the occurrence in this case is found in United States v. Roche, 11 Porto Rico Federal 440. The defendant was a postal clerk and letters had disappeared from the post office where he was employed. A "decoy" letter containing marked bills was sent through that office, and later was found in a drawer in furniture owned by the defendant. In considering the contention that the court erred in permitting a postal inspector to testify that there had been previous losses, the court at page 442 said: "It is urged that the court erred in permitting the postoffice inspector to testify that there had been previous losses of letters at the Fortuna postoffice, inasmuch as this might tend to prejudice the jury against the defendant. There was no intimation that the previous losses had been due to this defendant, and it is difficult to see how the sending of a decoy letter could be justified by the authorities unless there was evidence of previous losses of mail. Evidence of this kind is frequently looked upon with disfavor by juries, and since it had to be shown that a decoy letter was sent, all the circumstances connected with the sending should be set out in order that the jury might understand the whole situation. Otherwise it would seem that a trap was being laid without any justification, and the government's case impaired accordingly. The reason for sending the decoy letter was part of the res gestae of sending the letter itself. There was no error in admitting the evidence."

We have considered the cases of State v. Nevius, 77 Ohio App 161, 66 NE2d 243 and State of Florida v. Norris (Fla), 168 So2d 541 (1964) cited by defendant and find them clearly distinguishable on the facts.

■ In this case the testimony with respect of the calls made prior to June 9, 1965, was properly admitted to show the reason for the installation of the monitoring device.

As his second ground for reversal defendant argues that the court erred in permitting Gary Clifton, manager of the telephone company at Litchfield, to testify over defendant's objection, as to the results of the tracing of the calls made to Whitnel's home. Defendant contends that the witness is not shown to be an expert in the use of the equipment, and because there was no showing as to the reason why the technician who installed the equipment and traced the call was not in court, defendant was denied his constitutional right to confront the witnesses against him, and the testimony is hearsay.

Mr. Clifton testified that he had worked on the type of equipment used in tracing the calls, that he went with the technician as he checked through each stage of the tracing operation and when it was checked back to the telephone at defendant's cafe. He (Clifton) verified the records showing the location of the number to which the technician traced the call.

On cross-examination he stated that after the tests were made, the technician was the one who determined the number from which the call was made, that he was taking the technician's word that it was that particular number.

Although in the purely technical sense, the testimony of a supervisor under these circumstances, is hearsay, it is of a type that falls within a well recognized exception to the general rule applicable to hearsay testimony. We have seen the development of the rules of evidence governing the admissibility of business records, commencing with the rule in England that shop-books of " 'divers men of trades and handicraftsmen' " were ad-

missible in evidence of " 'the particulars and certainty of the wares delivered' " (5 Wigmore on Evidence 347, 3rd Edition), and as presently set forth in Supreme Court Rule 236. The basis for the admissibility of the records is that the circumstantial probability of their trustworthiness is a practical substitute for cross-examination of the individual making the entries. The same reasoning has been applied to make admissible entries made by one individual on the basis of statements or memoranda made by another person, O. S. Richardson Fueling Co. v. Seymour, 235 Ill 319, 323, 85 NE 496.

■ In our opinion the testimony describing the manner of tracing the calls was sufficient to show the "circumstantial probability of trustworthiness" to make it admissible without calling the technician as a witness. The witness was ably cross-examined and the jury given ample opportunity to determine whether the results of the test were accurate. Under the circumstances here presented, the trial court did not err in admitting the testimony.

Finally defendant contends that the court erred in refusing to admit the testimony of witnesses concerning defendant's general reputation for "peacefulness and quietude," on the ground that the trait was not involved in this litigation.

■ ■ It is clearly established that a defendant in a criminal case can make proof of such previous good character as is inconsistent with the commission of the crime with which he is charged. The People v. Lewis, 25 Ill2d 442, 185 NE2d 254. The offense charged is Disorderly Conduct, and in our opinion the traits of peacefulness and quietude are such as would be inconsistent with any form of disorderly conduct. The refusal to permit defendant's character witnesses to testify was error.

194

■ The People contend that the evidence of guilt is overwhelming, and assuming arguendo, some erroneous rulings on evidentiary matters, the judgment should not be reversed because clearly the error, if any, did not affect the result. This Court is unable to measure the extent to which the exclusion of testimony that defendant's reputation was good influenced the verdict, and the error committed is so prejudicial as to require reversal.

For the reasons herein set forth the judgment of the Circuit Court of Montgomery County is reversed, and the cause remanded for a new trial.

Judgment reversed and cause remanded.

MORAN and EBERSPACHER, JJ., concur.