THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* LOUIS LOWY, Defendant-Appellant.

First District (1st Division)  No. 60803

Opinion filed July 26, 1976.

SIMON, J., dissenting.

Diane Crawford Geraghty, of Northwestern Legal Assistance Clinic, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Edmund Hatfield, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

After a bench trial, Louis Lowy was found guilty of disorderly conduct under section 193—1(b) of the Municipal Code of Chicago and fined $10. On appeal defendant contends that the evidence presented was

insufficient to prove his guilt within the meaning of the ordinance, and that the trial court erred in refusing to admit certain testimony into evidence. Only the complaining witness, Cecil Young, and defendant testified at trial. The facts are in dispute.

Cecil Young, a Chicago police officer who was not on official duty at the time of the incident in question, owns an apartment building at 1824 East 79th Street. Young maintains a rental office on the ground floor of the building. On January 17, 1974, at approximately 5 p.m., Young, from the opposite side of the street, saw Lowy walking his dog on the sidewalk in front of Young's apartment building. The record indicates that the streets were crowded with heavy automobile traffic. The dog was attached to a chain held by Lowy, but Young testified that the dog was not wearing a choker collar. Young estimated that Lowy's dog, a Dalmatian, weighed approximately 75 pounds. Young testified that Lowy permitted his dog to pass through the front gate of the property. The dog allegedly urinated on the front door of the building and then squatted to defecate. Young stated that Lowy had brought the dog to the front yard of Young's building the previous day. At that time, Young warned Lowy about permitting the dog to defecate and urinate inside the gate. Young crossed the street and demanded the Lowy removed the dog. Lowy refused and told Young to "f___ yourself." Lowy then issued the command "sic him" to his dog. The dog lunged towards Young but did not touch him because Lowy held his grip on the chain. Young fell backwards and pulled his service revolver for the purpose of protecting himself from the dog. Upon the warnings of Young, Lowy held the dog by the chain while it stood on its hind legs. The force of the dog pulling forward caused Lowy to slip and fall on the ice and snow covering the ground. Young testified that he assisted Lowy to his feet after the fall. Young did not sustain any injury as a result of the incident. Young denied that he ever physically grabbed Lowy or that he swore at Lowy in profane language.

Louis Lowy's version of the incident contradicts Young's testimony in almost every respect. Lowy is the proprietor of a paint and wallpaper store at 1884 East 79th Street, located near Young's apartment building. Lowy's Dalmatian is a pet, not a "watch-dog." At approximately 5 p.m., Lowy closed his store and walked with his dog towards his automobile which was parked on the street near the front of Young's apartment building. Lowy testified that it was impossible for the dog to enter Young's property because the front gate was locked and barred with steel grills. Young stopped Lowy by shouting at him from across the street, "Hey, you son of a bitch, get that f_____ dog off the sidewalk." Lowy responded, "Who the hell are you? Since when do you own the city sidewalks?" An argument ensued resulting in physical contact. Young allegedly pushed and shoved Lowy, despite Lowy's pleas for Young to

desist. Young pulled his service revolver, pointed it at Lowy and said, "You son of a bitch, I'll kill you." Young then struck Lowy across the face causing Lowy to fall backwards. Lowy testified that his Dalmatian never lunged towards Young; that the dog never at any prior time urinated or defecated on the street or on Young's property; and that the dog doesn't understand the term "sic him." Although the Dalmatian will wander from the confines of Lowy's store, the dog never crosses the street in order to walk to a point as far as Young's property. At approximately 4 p.m., one hour before the incident occurred, Lowy walked his dog to an open field enabling the dog to relieve himself. Lowy denied that he ever swore at Young in profane language.

Both men claimed to have called the police. Once the police arrived, no arrest was made of either Young or Lowy. The police have never impounded Lowy's Dalmatian. On January 18, 1974, one day following the altercation, a complaint was filed against Lowy charging him with disorderly conduct in violation of section 193—1(b) of the Municipal Code of Chicago, which provides:

> "193—1. A person commits disorderly conduct when he knowingly:
>
> (a) Does any act in such unreasonable manner as to provoke, make or aid in making a breach of peace; or
>
> (b) Does or makes any unreasonable or offensive act, utterance, gesture or display which, under the circumstances, creates a clear and present danger of a breach of peace or imminent threat of violence; or \* \* \* ."

Lowy initially contends that his behavior was not public in nature and therefore outside the scope of the ordinance. Lowy relies on *City of Chicago v. Blakemore*, 15 Ill. App. 3d 994, 305 N.E.2d 687. In *Blakemore*, this court reversed a disorderly conduct conviction under section 193—1(b) that was based upon the defendant's use of profane language in a dispute with a police officer in the presence of a gathered crowd. The court in *Blakemore* found that defendant's use of profane language did not have an effect on the bystanders to the extent of causing an imminent threat of violence or breach of the peace. The court in *Blakemore* further noted that the use of offensive language in a dispute with a police officer is not per se disorderly conduct or breach of the peace. *Landry v. Daley* (N.D. Ill. 1968) 288 F. Supp. 183, 187.

Lowy's conduct in the present case is distinguishable from the behavior of the defendant found in *Blakemore*. Lowy incited his dog to lunge towards Young thereby threatening Young with a violent attack. In *Blakemore*, the defendant did not make a menacing gesture which indicated a threat of violence. The defendant in *Blakemore* conducted himself passively; the use of profane language being his only vice. Here,

Lowy's conduct went beyond the use of words and culminated in an active threat of violence which was unreasonable under the circumstances. Lowy's threat of violence falls within the definition of disorderly conduct as prescribed by section 193—1(b). *City of Chicago v. Ikin*, 12 Ill. App. 3d 489, 299 N.E.2d 513.

■■■ We find that Lowy's conduct was sufficiently public in nature. The altercation occurred in the yard of a building near a public street crowded with heavy automobile traffic. The record indicates that Young and Lowy were practically strangers to each other. Moreover, section 193—1(b) does not require that more than one person be threatened with violence. The ordinance clearly contemplates situations in which only one member of the public is threatened with violence. (*City of Chicago v. Ikin*, 12 Ill. App. 3d 489, 299 N.E.2d 513; *City of Bismark v. Travis* (N.D. 1967), 154 N.W.2d 918.) Consistent with our interpretation of section 193—1(b) is the comparable definition of disorderly conduct established by the Illinois Criminal Code:

> "(a) A person commits disorderly conduct when he knowingly:
> (1) Does any act in such unreasonable manner as to alarm or disturb *another* and to provoke a breach of the peace; * * * "
> (Emphasis added.) Ill. Rev. Stat. 1975, ch. 38, par. 26—1(a)(1); see Ill. Ann. Stat., ch. 38, par. 26—1, Committee Comments (Smith-Hurd 1970).

The record reflects that sufficient evidence was introduced by the city to sustain Lowy's conviction under section 193—1(b). It has been consistently held that the credibility of witnesses and the weight to be afforded their testimony are matters for resolution by the trier of fact. *City of Chicago v. Boyles*, 132 Ill. App. 2d 509, 270 N.E.2d 193.

Lowy secondly contends that the trial court erred in refusing to admit certain direct testimony into evidence. Lowy was asked on direct examination whether he had filed charges against Young with the Internal Affairs Division of the Chicago Police Department; whether he was offered money to drop charges against Young filed with the Internal Affairs Division; and whether he had sustained injuries as a result of the altercation. Objections were raised by the city to all of these questions. The court sustained every objection on the ground that the evidence sought was irrelevant.

■■ We are in full agreement with the trial court's rulings. Any charges lodged against Young by Lowy with the Internal Affairs Division had no connection to the disorderly conduct complaint filed by Young. Contrary to the mistaken belief of Lowy's counsel at trial that the disorderly conduct complaint was filed one month after the date of the incident, the complaint was actually filed by Young one day after the date of the incident. The trial court was correct in ruling that any charges brought by

Lowy against Young with the Internal Affairs Division are irrelevant to Young's prosecution of the disorderly conduct complaint or to the occurrence itself. Furthermore, Lowy's counsel argued at trial that evidence demonstrating injury sustained by Lowy related to the question of who was acting in a disorderly manner. The trial court correctly noted that evidence pertaining to any injury sustained by Lowy was not probative of a material issue in the prosecution of Lowy for disorderly conduct. The evidence offered by Lowy was therefore irrelevant under the circumstances.

■■ Lowy additionally contends that he should have been permitted to testify on direct examination that he had never been arrested prior to the City's prosecution of the disorderly conduct charge. Generally, an accused should be permitted to introduce evidence of good character as is inconsistent with the commission of the charged crime. (*People v. Wells*, 80 Ill. App. 2d 187, 224 N.E.2d 288.) However, evidence tending to demonstrate good character must make reference to the general reputation and conduct of the accused at or prior to commission of the offense. (*People v. Willy*, 301 Ill. 307, 133 N.E. 859.) It is not permissible to prove good character by showing that the accused had never been previously arrested, charged, prosecuted or convicted of a crime. (1 Wharton's Criminal Evidence §230, at 499 (13th ed. 1972); see 22A C.J.S. *Criminal Law* §678 (1961).) Therefore, the manner by which Lowy attempted to demonstrate good character was improper.

For these reasons, the judgment is affirmed.

Judgment affirmed.

GOLDBERG, P. J., concurs.

Mr. JUSTICE SIMON, dissenting:

This front fence dispute resulting in a $10 fine is entitled to the lengthy consideration it is receiving because it involves an interpretation of a significant feature of the City of Chicago's disorderly conduct ordinance. My view is that section 193—1(b) is not violated by threats or conduct involving two persons in a setting which does not cause consternation and alarm to others and thus disturb the tranquility of citizens or a community or which does not incite others to a breach of the peace or imminent threat of violence. The issue on which I disagree with the majority is whether an assault by one person on another not witnessed by or within the presence of others violates the disorderly conduct ordinance of the City of Chicago. I view the ordinance as reaching only conduct of a public nature and the resulting effect of the conduct upon others besides the two persons involved in the skirmish. Disorderly conduct is an

indecorum that incites public violence. *United States v. Woodard* (7th Cir. 1967), 376 F.2d 136, 141.

This court in *City of Chicago v. Blakemore* (1973), 15 Ill. App. 3d 994, 305 N.E.2d 687, reversed a disorderly conduct conviction under Section 193—1(b) based upon the defendant's use of profane language towards a police officer in the presence of an on-looking gathered crowd. The reason for the reversal was the absence of evidence establishing that the bystanders to the incident were affected by defendant's conduct.

The *Blakemore* holding relied upon *City of Chicago v. Perez* (1970), 45 Ill. 2d 258, 259 N.E.2d 4. In that case, disorderly conduct convictions of a group of "sit in" protest demonstrators who refused to leave a public welfare office after closing hours were reversed on the ground that the demonstrators' conduct did not disturb the normal activities of the personnel employed by the welfare agency. In construing a portion of a former disorderly conduct ordinance[1] of the City of Chicago, the supreme court held:

> "The ordinance in question clearly prohibits only that conduct which tends to cause public disorder or to disturb the public peace and quiet." 45 Ill. 2d 258, 260.

The city argues that if both sections 193—1(a) and (b) of its disorderly conduct ordinance[2] require that persons other than the actors be alarmed, disturbed or incited the sections are redundant. The distinction between sections (a) and (b) is that the former reaches acts which in fact result in disturbance of the public whereas (b) circumscribes conduct which while not actually resulting in public disorder creates a clear and present danger of public disruption. The difference is between conduct which provokes and an act which imminently threatens to provoke the public order.

The city also argues that because section 193—1(b) refers both to "breach of the peace" and "imminent threat of violence," separating the phrases with the disjunctive "or," two distinct types of illegal conduct must have been intended, only one of which includes the element of public disturbance. The thrust of section (b) is to reach all unreasonable conduct, verbal or physical, threatening the public peace. The use of the

---

[1] Chapter 193—1 of the Municipal Code of Chicago (since superseded): "All persons who shall make, aid, countenance, or assist in making any improper noise, riot, disturbance, breach of peace, or diversion tending to a breach of the peace shall be deemed guilty of disorderly conduct ° ° ° ."

[2] The ordinance provides: "193—1. A person commits disorderly conduct when he knowingly:

(a) Does any act in such unreasonable manner as to provoke, make or aid in making a breach of peace; or

(b) Does or makes any unreasonable or offensive act, utterance, gesture or display which, under the circumstances, creates a clear and present danger of a breach of peace or imminent threat of violence; or ° ° ° ."

words "imminent threat of violence" shows that the term "breach of the peace" includes more than violent acts, just as the preceding language "utterance, gesture or display" following the word "act" shows that the ordinance includes verbal as well as physical conduct. Section (a) does not use the words "imminent threat of violence," but neither does it refer to "utterances, gestures and displays." Yet, an argument that section (a) does not cover utterances which in fact disturb the public peace would be unsupportable. I do not interpret "breach of peace" in section (a) or (b) to exclude the threat of violence.

*City of Chicago v. Ikin* (1973), 12 Ill. App. 3d 489, 299 N.E.2d 513, relied on by the majority, involved only two persons in an apartment with no one else present, and did not pass upon whether the ordinance required that a third person be incited by the defendant's conduct. It is not helpful in disposing of the issue raised by defendant here.

Chicago's disorderly conduct ordinance includes the element of public disturbance, and is based on the tendency of the defendant's conduct to disturb or alarm others. Other criminal prohibitions are designed to deal with disorders involving only two individuals. The Illinois statutes relating to bodily harm declare it a crime for one person to threaten another with imminent use of force, thereby placing him in reasonable apprehension of receiving a battery. (Ill. Rev. Stat. 1975, ch. 38, par. 12—1.) If the defendant ordered his dog to attack Officer Young, he was guilty of assault and should have been charged with that offense. Had the city introduced evidence to prove that the defendant's conduct had an effect not only on Officer Young but on the public at large, he would have been guilty of disorderly conduct. The defendant was not charged with assault, and the city failed to introduce evidence establishing that anyone else was disturbed by the event involved in this case. There was no showing that any of the occupants of automobiles traveling on 79th Street were disturbed by the dispute between the defendant and Officer Young, paid any attention to it or even noticed it. I do not believe that the city of Chicago's disorderly conduct ordinance was intended to or should be used as a "catch all" for conduct which society may regard as offensive or as an expedient. and convenient receptacle for dealing with minor offenses. I would reverse the conviction.