THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT F. BUEHLER, Defendant-Appellant.

First District (3rd Division)   No. 1—91—2551

Opinion filed March 30, 1994.

Rita A. Fry, Public Defender, of Chicago (Janet Stewart, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Michael R. Slovis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

After a jury trial, defendant Robert F. Buehler was convicted of armed robbery in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 18—2 (now codified as 720 ILCS 5/18—2 (West 1992))) and sentenced to serve a term of 15 years' imprisonment. It is from the judgment of conviction that defendant now appeals to this court pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

On appeal, defendant argues that: (1) he was denied a fair trial by the admission of evidence of the religious backgrounds of two State witnesses; (2) the prosecutor improperly inquired as to whether visits were paid to defendant in jail; (3) he was denied a fair trial when the prosecutor presented rebuttal testimony concerning defendant's alleged sexual relationship with a woman; (4) the trial court erred in granting the State's motion *in limine* to preclude the presentation of evidence as to whether or not defendant had ever been convicted of a crime; (5) the prosecutor made improper remarks during closing argument; and (6) the trial court abused.its discretion in sentencing him.

For the reasons which follow, we affirm.

On January 24, 1991, at approximately 12:30 a.m., Michael Thompson and Suresh Kumar were returning from a prayer meeting to their apartment located at the intersection of Spaulding Avenue and Bryn Mawr Avenue in Chicago. After Thompson parked his car on nearby Catalpa Avenue, the two men walked to the corner of Spaulding Avenue and Catalpa Avenue and then proceeded north on Spaulding Avenue towards their apartment.

About 50 feet ahead of Thompson and Kumar, on the same side of the street, two men exited a gangway and began walking north. One of the men was described as an Oriental with an olive complexion and black hair, 18 to 20 years old and about 5 feet 6 inches in height,

weighing approximately 160 pounds and dressed in a black jacket, black shorts and black gym shoes. The other man, defendant, was described as an 18- to 20-year-old Caucasian with a fair complexion and light brown hair, approximately 5 feet 9 inches, weighing about 160 pounds and wearing a navy blue sweatshirt with a hood and high-top gym shoes.

Defendant and the man in shorts stopped at the intersection of Spaulding Avenue and an alley just before where Spaulding Avenue and Bryn Mawr Avenue cross. The temperature that night was below freezing. As Thompson and Kumar approached where the two other men had stopped, Thompson began to ask the man in shorts, "Hey, why are you wearing shorts?" Before Thompson finished his query, both of the darkly clad individuals turned around and defendant put a gun to Thompson's head.

Defendant pushed Thompson down onto the ground into some snow beneath a tree and demanded, "Give me your money or I will shoot you." Simultaneously, the man in shorts yelled at Kumar, "Get lost from here or else I will kill you." Kumar then walked about 40 to 50 feet away and subsequently attempted to return. The man in shorts continued to holler "Get lost from here."

Although defendant was wearing a hood, Thompson obtained a good view of defendant's face as it was not covered by the hood and the area was lit. Once he had Thompson on the ground, defendant, while straddling him, began to search Thompson's pockets. While having no money in his wallet, Thompson did have a school book bag and a pocket full of quarters that he had earned as tips. Throughout the exchange defendant had his gun pointed at Thompson's head and repeatedly yelled from about three to four inches away from Thompson's face, "Give me your money or I'm going to kill you. Where do you keep your money?" Defendant's breath reeked of alcohol. Defendant took everything that Thompson had in his pockets but left him with his school bag.

Defendant then got up and walked away from Thompson for several feet and then walked back. At this point, defendant ripped Thompson's book bag from his shoulder and headed east down the alley. The man in shorts fled north on Spaulding Avenue. Thompson and Kumar then called the Chicago police.

Officer Christie Roberts responded to the call. Roberts took a description of the assailants and investigated the crime scene, whereupon she found Thompson's bag in the alley and returned it.

On January 24, 1991, at approximately 3 p.m., Thompson was walking on Bryn Mawr Avenue after leaving Northeastern Illinois University. On the way to his apartment, Thompson noticed about

one-half block away a man who resembled defendant walking with a young woman. Subsequently, Thompson watched, from his apartment window, this couple exit from a liquor store that was located across from his apartment. Thompson then got into his car and unsuccessfully searched for the hooded man in high-top gym shoes.

On January 26, 1991, at around 10 p.m., while Thompson was in his apartment he began to hear loud screaming and yelling coming from the street below. Thompson then went downstairs to investigate. Once downstairs, Thompson could see defendant on the other side of the street yelling and tossing a garbage can over a fence. Among the spectators to this event was the young woman with whom defendant had entered the liquor store on January 24. Subsequently, the Chicago police arrived and placed defendant and some other individuals against a garage. Thompson told the police officers that defendant was the man who had robbed him. Defendant was arrested.

On January 27, 1991, at 12:20 a.m., the Chicago police asked Kumar to come view a lineup at the police station. At the lineup, Kumar positively identified defendant.

At trial, George Sandoval (George) and Bardo Sandoval (Bardo), as defense witnesses, testified that they were with defendant at the Sugar Bowl Lounge the evening of January 23, 1991. George recounted that he and Bardo arrived at the bar at around 6:20 p.m. After drinking a six-pack of beer, George left the bar at 9 p.m. to give his mother a ride and then returned at about 9:30 p.m. or 9:40 p.m. Subsequent to his return, George stayed outside until the bar closed at around 1:45 a.m. George further stated that he saw defendant inside the bar having a beer and leave the bar around closing time.

Bardo testified he and his brother arrived at the bar at around 6 or 6:30 p.m. Bardo recounted that defendant arrived at the bar at approximately 8 p.m. and played pool there until about 2 a.m.

Neither George nor Bardo made any attempt to notify anyone of defendant's alibi once informed of defendant's arrest.

Defendant testified that he was never near the crime scene January 23, 1991. Defendant stated that he spent the night at the Sugar Bowl Lounge, leaving once for about 15 minutes to get food. Defendant recounted that on January 26, 1991, he went to a birthday party for his uncle's friend and that was the first time that he was in the area. Defendant stated on direct examination that just prior to his arrest he was outside breaking up a fight between a woman and his girlfriend. However, Officer Richard Brueck, the arresting officer, testified that on the day of the arrest defendant told him that he had been drinking and had a fight with his girlfriend.

After hearing the trial evidence, the jury found defendant guilty of armed robbery. This appeal followed.

■ Defendant's first contention is that he was denied a fair trial by the admission of evidence regarding the religious background of Thompson and Kumar. The State initially maintains that defendant has waived this issue on appeal. We agree. Absent plain error, "[p]reservation of an issue on appeal mandates both the objection at trial and the inclusion of the issue in the post-trial motion." (*People v. Arsberry* (1993), 242 Ill. App. 3d 1034, 1041, 611 N.E.2d 1285, citing *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124; see also *People v. Medeiros* (1993), 249 Ill. App. 3d 139, 618 N.E.2d 1065.) As we perceive no plain error and defendant failed to make objections at trial or to include the matter in his post-trial motion, argument with respect to this issue is deemed waived.

■ We turn now to defendant's contention that he was denied a fair trial because the prosecutor improperly inquired as to whether visits were paid to defendant in jail. We find that this contention is also not cognizable on appeal. While defendant objected at trial to the State's asking if a defense witness had visited defendant in jail prior to trial, he failed to include such objection in his post-trial motion. Consequently, the issue is deemed waived. *Enoch*, 122 Ill. 2d at 186.

Next, defendant submits that he was denied a fair trial when the prosecutor presented rebuttal testimony concerning defendant's alleged sexual relationship with Jean Breidell, the young woman in whose company defendant was seen by Thompson. The State maintains that this information was adduced by the prosecutor in response to defendant's tendered defense of misidentification and to show that defendant was not a credible witness.

■ "Rebuttal evidence is that which is adduced by the prosecution to explain, repel, contradict, or disprove evidence presented by the accused. [Citation.] The decision whether to admit rebuttal testimony is within the sound discretion of the trial court, and its determination will not be reversed absent a showing of abuse of discretion." *People v. Rios* (1986), 145 Ill. App. 3d 571, 584, 495 N.E.2d 1103.

■ In the case *sub judice*, defendant premised his defense on a misidentification theory. Thompson testified that he was able to see defendant on the night of the attack and the evening of the arrest. In addition, Thompson testified that he believed that he saw defendant in the area around his apartment, near where the assault occurred, on January 24, 1991. In attempting to refute Thompson's testimony and bolster his misidentification defense, defendant testified on direct examination that before his arrest on January 26, 1991, he had never been in this neighborhood where the robbery took place. In rebuttal,

the State called on Breidell and Officer Louis Schubrych. Breidell on direct examination testified that defendant had not been staying in her apartment, that defendant had been to her apartment only once for a few minutes prior to January 26, 1991, and that she had only met defendant once about a year ago.

Schubrych testified that he had been present at a conversation that two assistant State's Attorneys had with Breidell. Schubrych recounted that Breidell stated that she had a sexual relationship with defendant and that he had stayed with her at her apartment for several days prior to his arrest.

Contrary to defendant's suggestion, we do not believe that this testimony was elicited only to bring his alleged sexual practices to light. Rather, we find that this testimony is relevant as it tends to rebut defendant's theory that he was misidentified by Thompson in that he was never in the neighborhood prior to his arrest. Moreover, such evidence is also relevant to defendant's credibility as it is in direct conflict with his testimony on direct examination. Consequently, there was no error by the trial court in admitting this into evidence at trial.

■ We now examine defendant's submission that the trial court erred in granting the State's motion *in limine* preventing him from introducing evidence that he had no prior convictions. We find this line of argument wholly without merit.

Evidence of good character may be introduced by a criminal defendant in order to establish that his character traits are inconsistent with commission of the offense charged (*People v. Hall* (1987), 159 Ill. App. 3d 1021, 1027, 513 N.E.2d 429), but the accomplishment of this is done by introducing evidence of defendant's general reputation for a specific character trait (*People v. Flax* (1986), 147 Ill. App. 3d 943, 951, 498 N.E.2d 667). However, a defendant is not allowed to introduce evidence of specific acts or personal opinion and, consequently, he cannot prove his good character by showing that he had never before been arrested, prosecuted, or convicted of a crime. (*Flax*, 147 Ill. App. 3d at 952; see also *City of Chicago v. Lowy* (1976), 40 Ill. App. 3d 950, 954, 353 N.E.2d 208.) After a careful review of the record, applying the aforementioned standard to this case, we fail to perceive how defendant was attempting to do anything more than prove his good character by demonstrating his lack of a criminal record. Thus, there was no error by the trial court with regard to this issue.

■ Defendant next urges that he was denied a fair trial by improper remarks made by the State in closing argument. In reference to allegedly improper prosecutorial remarks made in closing

argument, the supreme court in *People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970, stated:

"In reviewing the defendant's allegations of error here, we first note that a prosecutor is allowed a great deal of latitude in making the closing argument [citations], and the trial court's determination of the propriety of the argument will generally be followed absent a clear abuse of discretion [citation]. To constitute reversible error, the complained-of remarks must have resulted in substantial prejudice to the accused, such that absent those remarks the verdict would have been different. [Citation.] In reviewing allegations of prosecutorial misconduct, the closing arguments of both the State and the defendant must be examined in their entirety and the complained-of comments must be placed in their proper context." (*Cisewski*, 118 Ill. 2d at 175-76.)

(See also *People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 38.) A prosecutor may argue the evidence presented or reasonable inferences from the evidence. Furthermore, a prosecutor may respond to comments by defense counsel which clearly invite or provoke a response. *People v. Morrison* (1985), 137 Ill. App. 3d 171, 184, 484 N.E.2d 329.

The allegedly improper remark made by the prosecutor is as follows:

"[PROSECUTOR: Defense c]ounsel asked you wouldn't you know about his background if he had any? Well, ladies and gentlemen, we don't want to bring out any background or prejudice you about anything in his background. We just want you to decide this case based on the evidence."

From this statement defendant focuses on the use of the word "background" and argues that it implies that defendant had a criminal history.

However, defendant's brief fails to point out that moments before the prosecutor made this innocuous statement, defense counsel violated the order granting the State's motion *in limine* by stating before the jury that defendant had no prior criminal record. Thus, we believe the defense invited these comments by the State.

■ Finally, defendant posits that the trial court abused its discretion in imposing an excessive sentence. However, we find this issue was waived by defendant by failing to raise it in the trial court or in his post-trial motion. *Enoch*, 122 Ill. 2d at 186.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and CERDA, JJ., concur.