## STATE v. THOMAS E. WITT.

245 N. W. 2d 612.

September 3, 1976—No. 45197.

C. *Paul Jones*, State Public Defender, and *Rosalie E. Wahl*, Special Assistant State Public Defender, for appellant.

*Warren Spannaus*, Attorney General, *Peter W. Sipkins*, Solicitor General, *Richard B. Allyn*, Assistant Attorney General, *Gary Hansen*, Special Assistant Attorney General, and *DeWayne P. Mattson*, County Attorney, for respondent.

Heard before Rogosheske, Todd, and Breunig, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Defendant, Thomas E. Witt (Witt), appeals from a judgment of the district court entered pursuant to the verdict of a jury finding defendant guilty of kidnapping and aggravated rape. He was sentenced to the maximum term of 30 years on the aggravated rape conviction. Witt contends that the aggravated rape statute pursuant to which he was convicted and sentenced (since repealed) denied him equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution; that complainant's in-court identification of him was improperly admitted since it was based on constitutionally defective pretrial identification procedures; and that the evidence does not sustain the verdict. We affirm.

The issues raised on this appeal do not require a detailed statement of the facts except as they pertain to the pretrial identification procedures. The complainant in this case reported the rape to the police shortly after it occurred. Based on information which she provided and their investigation, police suspicion had focused on Witt by the day following the rape. On that day, the complainant went to the police station where she was shown a

display of eight photographs, one of which was of defendant. She could not identify any photo in the display as that of her assailant. Five days later, following notification to Witt's attorney, a lineup consisting of Witt and five other men was held. At this time, the complainant identified Witt, whose counsel was present throughout, as the man who had attacked her. During the trial the complainant made an in-court identification of Witt and testified that she did not recall having been shown the display of the eight photographs the day following the rape.

■ With respect to Witt's challenge to the sufficiency of the evidence to sustain the verdict, we have carefully reviewed the entire record and find this claim to be without merit.

■ The record further satisfies this court that the in-court identification was independent of any prior improper confrontation. The complainant had more than ample opportunity to observe her assailant during the crime, and her description immediately after the assault substantially portrays the defendant, Witt. State v. Hayes, 292 Minn. 399, 195 N. W. 2d 555 (1972); State v. Watts, 296 Minn. 354, 208 N. W. 2d 748 (1973). Although we conclude that the pretrial identification procedures employed by the police in this case did not create a very substantial likelihood of irreparable misidentification, see Neil v. Biggers, 409 U. S. 188, 198, 93 S. Ct. 375, 381, 34 L. ed. 2d 401, 410 (1972), we do not condone these unnecessarily suggestive procedures. If suspicion has focused on a particular individual and his picture is shown to the complainant along with others but the complainant does not identify the picture, a subsequent lineup, even though otherwise proper, is open to question when that individual is the only person in the lineup whose picture has recently been shown to the complainant. It would be a better practice in such a situation to eliminate the use of photos and proceed directly to the lineup, or to include in the group of pictures shown at least one or more pictures of persons other than the suspect who also subsequently appear in the lineup.

■ Witt raises an equal protection challenge to Minn. St. 1974,

§ 609.291,[1] our former aggravated rape statute, on the ground that it singles out for prosecution males who engage in illegal sexual intercourse with females—a particular type of sexual penetration—and subjects them to a maximum 30-year sentence, whereas males or females who illegally commit other types of sexual penetration can only be prosecuted under other less onerous criminal statutes.

Initially, we note that the statutory scheme governing criminal sexual conduct in Minnesota was completely revised by L. 1975, c. 374, and Witt concedes that he would have no equal protection challenge to the new statute, since the language of which he now complains was specifically eliminated therefrom. As of August 1, 1975, a member of either sex can be prosecuted for committing any illegal act of sexual penetration (as statutorily defined) upon a member of either sex.

If we accepted Witt's premise that under the former statute he suffered a greater penalty specifically *because of his gender*, we would be greatly troubled by his equal protection argument. However, we are convinced that the former Minnesota statutes defining and specifying punishments for various acts of sexual conduct did not create classifications based upon gender per se. Rather, those classifications were based upon legislative judgments as to the degree of harm posed to victims and to society as a whole by particular sexual acts, and as to the severity of

---

[1] Minn. St. 1974, § 609.291 provided: "Whoever has sexual intercourse with a female person, not his wife, without that person's consent and under any of the following circumstances, commits aggravated rape and may be sentenced to imprisonment for not more than 30 years:

"(1)  The victim's resistance is overcome by force; or

"(2)  The victim's resistance is prevented by reasonable fear of immediate and great bodily harm to the victim or another; or

"(3)  The victim is unconscious, physically powerless to resist, or incapable of giving consent through mental illness or defect and the condition is known or reasonably should have been known to the actor."

penalty necessary to accomplish punishment, deterrence, or other social goals with regard to each such act.

State legislatures possess broad discretion to define criminal offenses and prescribe penalties therefor. Our criminal statutes are replete with legislative designations of varying degrees of the same criminal offense, each carrying a varying penalty. See, 16A C. J. S., Constitutional Law, § 564:

"* * * The legislature * * * in prescribing and fixing punishment for crime has a great latitude of discretion in classifying the same with reference to the heinousness and gravity of the act or acts constituting the crime, and * * * the legislature may, without violating the equal protection clause, establish different punishments in different parts of the state, under different conditions, for the same offense, or different punishments for different degrees of the same offense; or it may provide a special punishment for a special class of offenders, such as guardians, minors, convicts, and for habitual offenders * * *."

The sole limitation which the equal protection clause imposes upon the legislature in the exercise of this power is that criminal statutes must not prescribe different punishments "for the same acts committed under the same circumstances by persons in like situation." Id. See, State v. Pehrson, 205 Minn. 573, 287 N. W. 313 (1939). We are not convinced that the former statutes defining rape and other criminal sexual offenses prescribed differing punishments for "the same acts."

It should be noted that if "great bodily harm" was inflicted during the commission of a sex crime other than rape, the assailant (whether male or female) would be subject to a 10-year, as opposed to a 4-year, maximum sentence pursuant to the former indecent liberties statute, Minn. St. 1974, § 609.296. Moreover, rape unattended by force or the other aggravating circumstances specified under Minn. St. 1974, § 609.291, subjected the perpetrator to a maximum sentence of only 10 years,

as opposed to the 30-year maximum for aggravated rape. Similarly, Minn. St. 1974, § 609.293, imposed a 10-year maximum sentence for sodomy and a 30-year maximum sentence for aggravated sodomy. Therefore, it is apparent that this legislative scheme was rationally designed to increase the severity of punishment in proportion to the legislative evaluation of the severity of injury caused, or likely to be caused, by particular criminal acts.

Each of these statutory provisions contained specific definitions of the precise act or acts thereby proscribed, and the corresponding penalty. Although all of the proscribed acts are generally related to each other, it is certainly within the legislative power to determine that each particular act engenders different types and degrees of harm to society and to the victim, and therefore should be treated separately.

Neither Minn. St. 1974, § 609.293, nor Minn. St. 1974, § 609.296—dealing, respectively, with sodomy and indecent liberties—drew any distinctions according to the sex of either the perpetrator or the victim of the offense. The only statutes which specified the sexes of the perpetrator and victim were Minn. St. 1974, §§ 609.291 and 609.292, dealing with aggravated rape and rape. On oral argument Witt's counsel explicitly stated that she was not arguing that women can commit rape or that men can be victims of rape. Indeed, were there evidence on this record, or were we able to take judicial notice, that women commit acts of forcible sexual intercourse upon men with any significant frequency,[2] we would have difficulty with a statutory scheme that subjected these acts to a much less severe punishment than that

---

[2] A Yale Law Journal study in 1952 found no reported case in which a woman had been convicted of rape as a principal, Comment, 62 Yale L. J. 55, note 2, nor has our research disclosed any such case subsequent to that study. For the general rule that rape can be committed by a male only, see 75 C. J. S., Rape, § 6. That is not to say that a female cannot be convicted of rape as a principal for aiding, advising, hiring, counseling, or conspiring in the crime under Minn. St. 609.05. Accord, People v. Hernandez, 18 Cal. App. 3d 651, 96 Cal. Rptr. 71 (1971).

imposed upon men who committed the equivalent acts upon women. However, in enacting the former rape law, the Minnesota Legislature presumably made a factual determination that the rape of women by men is a significant social problem, involving unique and potentially severe physiological, psychological, and social injuries and traumas,[3] and that other forms of sexual penetration, including a woman forcing sexual intercourse upon a man, are much less serious social problems because they occur extremely infrequently or because the harms they inflict are less grave, or because of both of these factors. This sort of legislative factual determination is not subject to judicial review. Davidson v. Patnaude, 145 Minn. 371, 373, 177 N. W. 495, 496 (1920).

The legislature's general discretion to selectively deal with those acts which it deems to pose the most significant societal problems is especially broad in the realm of criminal law. This well-established doctrine is stated in 16 Am. Jur. 2d, Constitutional Law, § 505:

"* * * [T]he rule is fundamental that the state may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses. This rule is particularly applicable to police regulations. The legislature is not bound, in order to support the constitutional validity of a regulation, to extend it to all cases which it might possibly reach. In dealing with practical exigencies, the legislature may be guided by experience. If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.

"It is generally sufficient if a statute embraces such instances as lie at the root of the evil which it is sought to remedy, and when it does this, it does not deny to any person the equal protection of the law by reason of its failure to include other matters within the scope of its operation. The state may legislate in such

---

[3] See, generally, Note, 61 Cal. L. Rev. 919; Brownmiller, *Against Our Will: Men, Women, and Rape.*

a manner even though the forbidden act does not differ in kind from those that are allowed, because it is free to recognize degrees of harm and may confine its restrictions to those classes of cases where the need is deemed to be clearest. Hence, it is not enough to invalidate a law that others may do a thing which is equally harmful and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named.

\* \* \* \* \*

"The rule is also well settled that legislation may recognize degrees of evil without being arbitrary, unreasonable, or in conflict with the equal protection clause of the Fourteenth Amendment. It is no requirement of equal protection that all evils of the same genus be eradicated or none at all. This principle is sometimes stated in the concept that the power of a state to classify objects of legislation may be determined by degrees of evil, or exercised in cases where detriment is specially experienced. Legislation is addressed to evils as they appear. \* \* \* It may 'proceed cautiously, step by step,' \* \* \*."

This court has given credence to these principles in previous cases. E. g., State v. Fairmont Creamery Co. 162 Minn. 146, 202 N. W. 714 (1925) ; State v. Elliott, 135 Minn. 89, 160 N. W. 204 (1916). That our legislature can fairly be presumed to "proceed step by step" in addressing those classes of cases where the need for legislation is deemed to be clearest is underscored by the legislature's 1975 revision of the statutes herein complained of, altering the definition of criminal sexual conduct to reflect an altered legislative judgment as to the nature and relative gravity of the various proscribed acts.

Our conclusion that the former aggravated rape statute does not create classifications based upon gender per se, and that it does not violate the equal protection clause because it does not prescribe different punishments for the same acts derives strong support from the legal literature pertaining to the Equal Rights

Amendment.[4] Even proponents of this amendment—which would require courts to strictly scrutinize any gender-based classification—recognize that classifications based on physiological characteristics unique to one sex or the other, as the former Minnesota rape statute clearly was, would not violate the amendment.[5] As noted above, Minnesota's former statutes prohibiting sodomy and indecent liberties, involving acts of sexual penetration and contact that are not delimited by physiological characteristics unique to one sex, do not require that either the perpetrator or the victim be of a certain sex.

For the foregoing reasons, we conclude that Witt was not denied the equal protection of the laws by Minn. St. 1974, § 609.291.

Affirmed.

---

[4] Brown, Emerson, Falk & Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women,* 80 Yale L. J. 871.
[5] Id. 893.