# STATE OF HAWAII, Plaintiff-Appellee, *v.* ISIDRO RIVERA, Defendant-Appellant

NO. 7025

JUNE 6, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
RETIRED JUSTICE MARUMOTO AND CIRCUIT JUDGE LUM
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY OGATA, J.

Defendant-appellant, Isidro Rivera (hereinafter "appellant"), was convicted on February 15, 1978, of two counts of kidnapping in the first degree, in violation of HRS § 707-720 (1976), and one count of rape in the first degree, in violation of HRS § 707-730 (1976). On appeal, he raises the following questions:

I. Whether the rape statute under which he was convicted was unconstitutional?

II. Whether the trial court erroneously excluded character evidence?

III. Whether the trial court erred in denying his motion for judgment of acquittal?

IV. Whether trial counsel failed to provide him with effective assistance in his defense?

We answer all questions in the negative and affirm his conviction. We discuss below the issues seriatim.

122

I.

Constitutionality of HRS § 707-730 (1976).

Appellant was convicted of first degree rape under HRS § 707-730 (1976).[1] The applicable statute was amended as of June 26, 1979[2] and as we understand appellant he would have no equal protection challenge to the new statute. The purpose of the amendment was to restate the statutory provisions in gender-neutral terms. Appellant contends that this amendment supports his claim that the statute, as it stood prior to the amendment, was unconstitutional. The legislature, by substituting the word "person" wherever words making a gender distinction appeared in the statute, did not intend to "invalidate, influence, or in any way affect any case currently before the Supreme Court on appeal from a criminal prosecution arising under these statutes." House Stand. Com. Rep. No. 620 (1979), 1979 House Journal 1434. Rather, the intent was to eliminate the possibility of a successful constitutional challenge, which would create a void in our criminal laws.

Appellant challenges the constitutionality of HRS § 707-730 prior to its amendment, and claims that, by its terms, it denied him the equal protection of the law by punishing only men and no women, and protecting only women and no men, thus violating the equal protection guarantees of the Fourteenth Amendment of the United States Constitution and Article I, Section 4 of the Hawaii State Constitution[3] and the

---

[1] HRS § 707-730 (1976) provided in pertinent part:

HRS § 707-730 *Rape in the first degree*. (1) a male commits the offense of rape in the first degree if:

(a) He intentionally engages in sexual intercourse, by forcible compulsion, with a female and:

(i) The female is not, upon the occasion, his voluntary social companion who had within the previous twelve months permitted him sexual intercourse; . . . .

(2) Rape in the first degree is a class A felony.

[2] Act 225, 1979 Session Laws Of Hawaii.

[3] In 1978, Article I, Section 4 was renumbered Article I, Section 5.

equal rights amendment, Article I, Section 21, of the Hawaii State Constitution (ERA).[4]

To withstand judicial scrutiny under the equal protection clause, a sex-based distinction " 'must serve important governmental objectives and must be substantially related to achievement of those objectives.' " *Caban v. Mohammed*, 441 U.S. 380, 388 (1979); *Orr v. Orr*, 440 U.S. 268, 279 (1979); *Craig v. Boren*, 429 U.S. 190, 197 (1976); *Holdman v. Olim*, 59 Haw. 346, 350, 581 P.2d 1164, 1167 (1978). Under this principle, the question is whether the sex-based classification in the former rape law served an important governmental objective and was substantially related to achievement of that objective. We find that it plainly met the test.

Although the statute sets up a gender-based classification by defining rape as an offense which can be committed only by a male, it reflects a legislative judgment as to the degree of harm posed to potential victims of nonconsensual intercourse. "While we recognize that it is possible for females to commit a sex offense which might be deemed rape, the fact remains that historically and generally rape is a crime committed by males against females." *Moore v. Cowan*, 560 F.2d 1298, 1303 (6th Cir. 1977) *cert. denied*, 435 U.S. 929 (1978); *State v. Witt*, 310 Minn. 211, 218-219, 245 N.W.2d 612, 616-617 (1976); *State v. Craig*, 169 Mont. 150, 157, 545 P.2d 649, 653 (1976). The legislature chose to selectively deal with the act of forced intercourse by men upon women as a more significant societal problem where the need for proscription was clearest. Protecting women from nonconsensual intercourse is an important legislative objective. And a law which punishes males for nonconsensual intercourse with women against their will is substantially related to that objective. Appellant's contentions might be more persuasive if he had provided us with empirical data tending to show that female rapes of males presented a social problem. In *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 400 (1937), the United States Supreme Court restated the principle that "[i]f 'the law

---

[4] In 1978, Article I, Section 21 was renumbered Article I, Section 3.

124

presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' " We are dealing with a criminal sex offense statute. We are not dealing with an overbroad generalization based on sex which is entirely irrelevant to any difference between men and women or which demeans the ability or status of the affected class. The courts have been reluctant in striking down criminal sex laws and all have upheld rape statutes against constitutional challenges.[5] *Moore v. Cowan* 560 F.2d. at 1303; *State v. Fletcher*, 341 So.2d 340 (La. 1976); *State v. Witt*, 310 Minn. at 219, 245 N.W.2d at 618; *State v. Craig*, 169 Mont. at 156, 545 P.2d at 653; *People v. Reilly*, 85 Misc.2d 702, 381 N.Y.S.2d 732 (1976); *People v. Gould*, 188 Colo. 113, 532 P.2d 953 (1975); *Brooks v. State*, 24 Md. App. 334, 330 A.2d 670 (1975); *Stewart v. State*, 534 S.W.2d 875 (Tenn. Crim. App. 1975); *Finley v. State*, 527 S.W.2d 553 (Tex. Crim. App. 1975); *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974), *cert. denied*, 420 U.S. 935 (1975); *People v. Medrano*, 24 Ill. App.3d 429, 321 N.E.2d 97 (1974); *State v. Price*, 215 Kan. 718, 529 P.2d 85 (1974); *State v. Ewald*, 63 Wis.2d 165, 216 N.W.2d 213 (1974).

Appellant claims that because Article I, Section 4, now Article I, Section 5, of the Hawaii State Constitution specifically enumerates sex along with race, religion and ancestry, this specific enumeration requires a more stringent test than that required by the Fourteenth Amendment. Moreover, the ERA, which, by its terms forbids classifications based on sex, is said to necessitate a judicial standard of review at least as high as the "strict scrutiny" standard under equal protection analysis.

---

[5] Challenges of the constitutionality of statutory rape statutes have also been consistently unsuccessful and the courts have upheld the statutes against constitutional challenges. Rundlett v. Oliver, 607 F.2d 495 (1st Cir. 1979); People v. McKellar, 81 Cal. App.3d 367, 146 Cal. Rptr. 327 (1978); People v. Mndange-Pfupfu, 97 Misc.2d 496, 411 N.Y.S.2d 1000 (1978); Moore v. McKenzie, 236 S.E.2d 342 (W. Va. 1977); People v. Salinas, 191 Colo. 171, 551 P.2d 703 (1976); State v. Elmore, 24 Or. App. 651, 546 P.2d 1117 (1976); In re W.E.P., 318 A.2d 286 (D.C. App. 1974); State v. Drake, 219 N.W.2d 492 (Iowa 1974); In re J.D.G., 498 S.W.2d 786 (Mo. 1973). *Contra*, Meloon v. Helgemoe, 564 F.2d 602 (1st Cir. 1977), *cert. denied*, 436 U.S. 950 (1978).

Not even the ERA, however, forbids all classifications. "The fundamental legal principle underlying the ERA . . . is that the law must deal with particular attributes of individuals. . . ." Brown, Emerson, Falk, and Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women*, 80 Yale L.J. 871 (1971) (hereinafter cited as Brown). A classification based on a physical characteristic unique to one sex is not an impermissive under- or over-inclusive classification because the differentiation is based on the unique presence of a physical characteristic in one sex and not based on an averaging of a trait or characteristic which exists in both sexes. Two frequently-cited examples are laws relating to wet nurses, which would apply to all or some women but no men; or laws regulating sperm donation which would apply to all or some men, but no women.

Rape was defined in HRS § 707-730 (1976) as a male engaging in "sexual intercourse, by forcible compulsion, with a female." HRS § 707-700(7)(1976) defines "sexual intercourse" as "any act of coitus between male and female, but does not include deviate sexual intercourse; it occurs upon any penetration however slight and emission is not required." "Coitus" is defined in Webster's Third New International Dictionary (1967) as "the act of conveying the male semen to the female reproductive tract involving insertion of the penis in the vaginal orifice followed by ejaculation." A sex-based distinction existed in the former rape statute but the differentiation in treatment was based upon unique physical characteristics of men and women and the unique characteristics justified the classification. Insofar as rape was defined as forced intercourse by a male with a female, it was based on a physiological characteristic unique to males. Furthermore, as the court stated in *Finley v. State*, 527 S.W.2d at 556 "[h]ymen and uterine injury to female rape victims, the possibility of pregnancy, and the physiological difficulty of a woman forcing a man to have sexual intercourse with her all suggest a justification for the sexual distinction. . . ." It has also been said that "[s]o long as the law deals only with a characteristic found in all (or some) women but *no* men, or in all (or some) men but *no* women, it does not ignore individual

characteristics found in both sexes. . . ." Brown, *supra*, at 893. As such, the statute neither denied equal rights to men nor did it violate the ERA. *People v. Salinas*, 191 Col. at 174, 551 P.2d at 706; *State v. Witt*, 310 Minn. at 218-219, 245 N.W.2d at 618; *Finley v. State*, 527 S.W.2d at 556.

II.

At trial, appellant's wife, Susan Rivera, was called by appellant to testify on his behalf as to his good character for honesty, peacefulness and nonviolence. The trial court did not allow the witness to testify to appellant's good character traits because she had not known him in December, 1976, when the alleged offenses occurred. The witness had met appellant in August 1977 and married him in November 1977. The trial began on February 13, 1978.

An accused has the right to give evidence of personal character traits associated with the basic nature of the offense with which he is charged as circumstantial evidence of his innocence, *State v. Faafiti*, 54 Haw. 637, 642, 513 P.2d 697, 701 (1973), and evidence of those traits to support his credibility as a witness. *United States v. Lewis*, 482 F.2d 632, 641, n. 61 (D.C. Cir. 1973); *State v. Johnson*, 298 N.C. 47, _____, 257 S.E.2d 597, 615 (1979). The point in time at which the accused's character for peacefulness and nonviolence would be relevant is at a time at or prior to the date of the commission of the alleged offense. *United States v. Null*, 415 F.2d 1178, 1180 (4th Cir. 1969); *People v. Bascomb*, 74 Ill. App.3d 392, 394, 392 N.E.2d 1130, 1132 (1979); *City of Chicago v. Lowy*, 40 Ill.App.3d 950, 954, 353 N.E.2d 208, 212 (1976); *State v. Hobbs*, 172 N.W.2d 268, 271 (Iowa 1969); 5 Wigmore, Evidence §§ 1617, 1618 (Chadbourn rev. 1974). The intent of the rule is to protect the accused because after publication of the charges, "a false reputation is likely to be created, a reputation based perhaps in part upon rumors about the very act charged. . . ." 5 Wigmore, Evidence, § 1618 (Chadbourn rev. 1974). The trial court ruled that Susan Rivera was not qualified to testify to appellant's reputation in the community for peacefulness and nonviolence because she

had not known him in December 1976. This case is unlike *Faafiti* in which the witness' testimony was disallowed because of "insufficient basis for knowledge" of the defendant's reputation in the community. *Id.* at 643, 513 P.2d at 702. In *Faafiti* we held that the trial court did not abuse its discretion in passing upon the insufficiency of evidence establishing the witness' knowledge of the defendant's reputation. In the instant case, however, evidence which might have established a sufficient basis for the witness' knowledge of appellant's character was disallowed. Although Susan Rivera did not know appellant when the alleged offenses occurred in December 1976, assuming that the proffered evidence sufficiently demonstrated that between August 1977 and February 1978, she had become familiar with what appellant's reputation in the community for peacefulness and nonviolence *had been* as of or prior to December 1976, her testimony should have been admitted.

Appellant having testified on his own behalf, placed his credibility in issue. Evidence concerning an accused's reputation for truth and veracity is in issue at the time of trial and is an exception to the general rule that reputation evidence cannot relate to a time subsequent to the commission of the offense. *United States v. Mandel,* 591 F.2d 1347, 1386 (4th Cir. 1979); *United States v. Null,* 415 F.2d at 1180; *Greenfield v. State,* 336 So.2d 1205, 1207 (Fla. App. 1976); *Thomas v. State,* 41 Ala. App. 19, 23, 122 So.2d 731, 734 (1960). Assuming that Susan Rivera was proven to be a competent reputation witness, exclusion of her testimony as to appellant's reputation for honesty and veracity was error.

However, even where error occurs, there will be no reversal where on the record as a whole, no prejudice to appellant has resulted. *Kekua v. Kaiser Foundation Hospital,* 61 Haw. 208, 218, 601 P.2d 364, 371 (1979); *Lyon v. Bush,* 49 Haw. 116, 123, 412 P.2d 662, 667 (1966); *Beckson v. Post,* 38 Haw. 436, 439 (1949); *cf. State v. Pokini,* 55 Haw. 640, 646, 526 P.2d 94, 101 (1974). The decision depends upon the nature and quantum of proof deduced and the type of error committed. *See State v. Pokini,* 55 Haw. at 646, 526 P.2d at 101. Here there was evidence sufficient to prove beyond a reasonable

doubt that the appellant was guilty of rape and kidnapping as charged. Where there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, errors in the admission or exclusion of evidence are deemed harmless. *Bates v. Nelson*, 485 F.2d 90, 94 (9th Cir. 1973), *cert. denied*, 414 U.S. 1134 (1974); *Rothschild v. State*, 388 F.Supp. 1346, 1351 (S.D.N.Y. 1975); *State v. Pokini*, 55 Haw. at 646, 526 P.2d at 101; *State v. Murrell*, 224 Kan. 689, 693, 585 P.2d 1017, 1021 (1978). Error in excluding reputation evidence which might prejudice an accused in a close case does not call for a reversal in a strong one such as this.

### III.

Appellant contends that the trial court's denial of a motion for judgment of acquittal on the first degree rape count, made at the close of the State's case, was error. The test on appeal for determining whether the motion should have been granted is whether the evidence is such that "a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *State v. Broad*, 61 Haw. 187, 189, 600 P.2d 1379, 1380 (1979); *State v. Murphy*, 59 Haw. 1, 19, 575 P.2d 448, 460 (1978); *State v. Rocker*, 52 Haw. 336, 346, 475 P.2d 684, 690 (1970).

Specifically, he argues that there was insufficient evidence to support a finding of forcible compulsion by the appellant.

With respect to this challenge to the sufficiency of the evidence to sustain the finding of "forcible compulsion," we have carefully reviewed the entire record and find this claim to be without merit. The element of forcible compulsion consisted of threats by the appellant which placed the complaining witness in fear of serious bodily injury to herself or to her younger sister. The two women had arrived on Kauai on December 18, 1976 in the early evening and intended to camp at Lydgate Park for the night. This trip was their first to Hawaii. Appellant approached them and when the two sisters told him of their plan to spend the night at the Park, he advised against it and offered to share his home with them.

They refused but when he offered to let them camp on his property, they accepted the offer. Appellant drove the women to a cliff overlooking Waimea Canyon and, brandishing a knife, told them he would rape them and throw them off the cliff. He then offered a deal whereby he would release them the next morning if one agreed to sleep with him that night. Upon arriving at his house, appellant showed the older sister, the complaining witness, a pistol and left it on the dresser in the bedroom. The sisters described and the police subsequently recovered, with search warrant, the knife used to threaten them by the cliff and the pistol he used to scare the complaining witness at his residence. These weapons and the testimonies of the sisters gave the trial court sufficient evidence to determine credibility and to draw justifiable inferences of fact from which a reasonable man might fairly conclude guilt beyond a reasonable doubt. *State v. Rocker,* 52 Haw. at 346, 475 P.2d at 690-691.

## IV.

Finally, appellant argues that his trial counsel failed to provide him with effective assistance in (1) failing to raise a defense based on mental disease, disorder or defect, (2) failing to subpoena the examining physician and (3) cross-examining the witnesses in a matter that "highlight [ed] and strengthen[ed] the prosecution's case instead of aiding appellant."

The Sixth Amendment and Article I, Section 14 of the Hawaii Constitution provides that in criminal prosecutions, the accused shall enjoy assistance of counsel. This right to counsel does not mean " 'errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' " *Brubaker v. Dickson,* 310 F.2d 30, 37 (9th Cir. 1962); *State v. Kahalewai,* 54 Haw. 28, 30, 501 P.2d 977, 979 (1972). In assessing a claim of ineffective assistance, this court will look to the entire record and a conviction will not be set aside on this ground where there is no factual basis for the claim. *State v. Kahalewai,* 54 Haw. at 32, 501 P.2d at 980; *People v.*

*Jenkins*, 13 Cal.3d 749, 753, 532 P.2d 857, 859, 119 Cal. Rptr. 705, 707 (1975), *cert. denied*, 423 U.S. 860 (1975).

Appellant argues that trial counsel should have raised a defense based on a mental disease, disorder or defect because the testimonies of the complaining witness and her sister revealed that appellant's "personality went through a number of drastic changes" — that he offered or gave a weapon to one of the women and asked them to kill him and that he appeared in court wearing an earring. In support of his claim, appellant cites cases in which a court found that a defense of mental disease, disorder or defect was plausible and failure to raise this defense denied the accused effective assistance. *United States ex rel. Lee v. Rowe*, 446 F.Supp. 1039 (N.D. Ill. 1978); *People v. Corona*, 80 Cal. App.3d 684, 145 Cal. Rptr. 894 (1978). In these and other similar cases the facts known and available or with reasonable diligence accessible to trial counsel raised a reasonable doubt as to the defendant's mental condition. Defendants in these cases had histories of mental illness including commitment, psychiatric reports and other evidence of violence suggesting mental disturbance. Appellant's threats to harm the the complaining witness, her sister, or himself are not the kind of facts from which it would appear that the defense of mental impairment should have suggested itself to a reasonably diligent trial counsel.

Trial counsel's failure to subpoena the medical doctor who examined the complaining witness was based on adequate reason and does not, under the circumstances, amount to a denial of effective assistance. The defense in this case was consent. Appellant did not deny the acts of intercourse. The record reveals that trial counsel made a decision not to call the doctor because his testimony as to whether or not there had been intercourse was not necessary.

Finally, his contention that trial counsel ineffectively cross-examined the complaining witness and her sister is also without basis. He claims that the cross-examination highlighted and strengthened the prosecution's case. More is required than mere allegations that trial counsel should have cross-examined in another manner. Appellant was repre-

sented at trial by experienced counsel of his own choosing and he was not without effective assistance.

Appellant's convictions are affirmed.

*Pat McManaman (Marie N. Milks* on the briefs), Deputies Public Defender, for defendant-appellant.

*Calvin K. Murashige,* Deputy Prosecuting Attorney, County of Kauai, for plaintiff-appellee.