**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000146
30-JUN-2020
08:21 AM**

NO. CAAP-19-0000146

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
JAYLORD PARRAS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1PC13-1-001603)

SUMMARY DISPOSITION ORDER
(By: Leonard and Wadsworth, JJ., and
Ginoza, Chief Judge, dissenting)

Defendant-Appellant Jaylord Parras (**Parras**) appeals from the Judgment of Conviction and Sentence (**Judgment**), entered on February 6, 2019, in the Circuit Court of the First Circuit (**Circuit Court**).[1] After a jury trial, the Circuit Court convicted Parras of one count of Sexual Assault in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-730(1)(b) (2014)[2] (**Count 1**); one count of Sexual Assault in the

---

[1] The Honorable Glenn J. Kim presided.

[2] HRS § 707-730(1)(b) provides, in relevant part:

(1) A person commits the offense of sexual assault in the first degree if:

. . . .

    (b)    The person knowingly engages in sexual penetration with another person who is less than fourteen years old[.]

Third Degree, in violation of HRS § 707-732(1)(b) (2014)[3/] (**Count 2**); and two counts of Sexual Assault in the First Degree, in violation of HRS § 707-730(1)(c) (2014)[4/] (**Counts 3 and 4**). The convictions stemmed from charges that Parras had sexually assaulted the complaining witness ("CW"), his half-sister, on separate occasions when she was a minor. The Circuit Court sentenced Parras to twenty years of imprisonment on each of Counts 1, 3 and 4, and five years of imprisonment on Count 2, with the sentences for Counts 1, 3, and 4 to run concurrently, but consecutively to the sentence on Count 2.

On appeal, Parras contends that the Circuit Court erred in: (1) precluding Parras's former girlfriend, CA, from testifying that he was a "peaceful, non-violent person"; and (2) sentencing Parras to consecutive terms of imprisonment allegedly based in part on his parents' mistreatment of the CW.

For the reasons explained below, we vacate the Judgment and remand the case to the Circuit Court for further proceedings.

---

[3/] HRS § 707-732(1)(b) provides, in relevant part:

(1) A person commits the offense of sexual assault in the third degree if:

. . . .

(b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]

[4/] HRS § 707-730(1)(c) provides, in relevant part:

(1) A person commits the offense of sexual assault in the first degree if:

. . . .

(c) The person knowingly engages in sexual penetration with a person who is at least than fourteen years old but less than sixteen years old; provided that:

(i) The person is not less than five years older than the minor; and

(ii) The person is not legally married to the minor[.]

2

## I.   RELEVANT BACKGROUND

At trial, the CW testified in part as follows:  In November 2007, when she was 13 years old, she, her mother and her step-father moved to a house in Waipahu.  During that time, Parras "came to the door" and was "crying" because he had recently broken up with CA.  Later that night, the CW was talking with Parras in the room where he was staying.  Parras was laying next to the CW on the floor.  At some point, the CW "was probably half asleep" or sleeping, when she woke up to Parras "fingering [her]."  Parras had "reached into [her] shorts, and he started rubbing [her] vagina" with his hand and "inserted his fingers . . . into [her] vagina."  Parras "got up on his knees" and pulled off CW's shorts and underwear, but left on her shirt.  Parras then "inserted his penis into [her] vagina[.]  CW said "no," but did not think Parras heard her.  CW tried but was unable to push Parras off of her because he was bigger than she was.  Eventually, the CW "just got up and left."  The CW did not tell anyone about this incident right after it happened because she was hurt, embarrassed, angry and confused.

The CW continued her testimony as follows:  After the CW's family renovated their house in 2008, Parras "officially moved in."  The CW was about 14 or 15 years old.  One evening, as the CW and Parras were home alone, Parras "came up from behind [her,] and "started tickling [her]" with "his hands to . . . [her] sides."  Parras and the CW were laughing as they fell to the floor.  Parras was  wearing only boxers.  Parras "was on top of [the CW]," and "just kept tickling [her] and . . . pulled [her] shorts off as he was tickling [her]."  Parras then "inserted his penis into [the CW's] vagina[.]"  Parras also "fingered [the CW]" by putting "his fingers . . inside of [her] vagina."  CW tried to fight Parras with her legs and told him "no."  As she said "no," he put his hand over her mouth.  Parras did not stop and "was just laughing."  The CW tried to get Parras off of her, but she "was hurting, and . . . sad . . . so [she] just stopped.  [She] got tired."  Eventually, Parras ejaculated and "just left."  The CW did not tell anyone immediately about this incident.

Parras testified that he did not commit these acts, and it was "all a lie."[5/]  He said that "around 2005," he moved out of his family's house to live with CA, and in December 2008, when he and CA broke up, he went to live with his friend, Craig, for a short period of time.  In early summer, 2009, he met his current wife.

As part of his defense, Parras called CA as a witness. She testified that Parras was her ex-boyfriend and that, in 2006, she had a child with him.  She further testified that her relationship with Parras continued from 2004 until December 2008 or January 2009.  According to CA, she and Parras began living together at her parents' house around March 2006, when she was about seven months pregnant.  She stated that Parras lived with her until they broke up sometime after mid-December 2008.

Having elicited testimony about the nature and length of CA's relationship with Parras, defense counsel continued his examination of CA as follows:

> Q.  Would you say based on your knowledge of him that you could form an opinion about whether he is a peaceful person or a violent person?
>
> [DEPUTY PROSECUTING ATTORNEY (DPA)]:  Your Honor, I'm going to object.  Relevance and --
>
> THE COURT:  Sustained.
>
> [DEFENSE COUNSEL]:  Your Honor, can we be heard on that?
>
> THE COURT:  No.  Sustained.  I don't believe peaceful or nonviolent is relevant to the issues in this case. Sustained.

In his redirect examination of CA, defense counsel continued:

> Q.  State just asked you if you guys would fight during your relationship?
>
> A.  Yes.
>
> Q.  Given your knowledge of [Parras], would you say that you could form an opinion about whether he's peaceful or violent?
>
> [DPA]:  Objection, Your Honor.  Relevance.
>
> THE COURT:  Sustained.

---

[5/]    It appears there was no physical, medical, or scientific evidence that directly supported either party's claims.

Q. (By [DEFENSE COUNSEL]) Did he -- was he ever -- was he ever aggressive or violent with you?

[DPA]: Same objection, Your Honor.

THE COURT: I'll allow aggressive.

THE WITNESS: No.

## II.  DISCUSSION

Parras contends that the Circuit Court erred in precluding CA from providing opinion evidence of Parras's pertinent character traits — namely, that he was a "peaceful, non-violent person" — under Hawaii Rules of Evidence (**HRE**) Rules 404(a)(1)[6] and 405.[7]  He argues that such evidence was relevant and admissible based on this court's decision in State v. Iosefa, 77 Hawaiʻi 177, 880 P.2d 1224 (App. 1994).

In Iosefa, the court held that a witness for the defense should have been allowed to testify that the defendant, who was charged with sexually assaulting a 16-year-old girl, was "a peaceful, non-violent person."  Id. at 186, 880 P.2d at 1233. The court reasoned that testimony of the defendant's good and peaceful character directly related to whether he would sexually assault a young girl, and was therefore admissible under HRE Rule 404(a)(1).  Id. (citing State v. Faafiti, 54 Haw. 637, 513 P.2d 697 (1973)).

---

[6]    HRE Rule 404(a)(1) provides:

(a) Character evidence generally.  Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

　　(1)　Character of accused.  Evidence of a pertinent trait of character of an accused offered by an accused, or by the prosecution to rebut the same[.]

[7]    HRE Rule 405 provides, in relevant part:

(a) Reputation or opinion.  In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.  On cross-examination, inquiry is allowable into relevant specific instances of conduct.

The State points out that in Iosefa, the applicable sexual assault charges required the prosecution to prove that the defendant "knowingly subject[ed] another person to an act of sexual penetration" or "to sexual contact" "by strong compulsion." Id. at 184, 880 P.2d at 1231 (emphasis added). Evidence of the defendant's peaceful and non-violent character was therefore relevant to whether he acted with "strong compulsion." In contrast, the State argues, Parras was charged with "strict liability sexual assaults" of the CW based on her age; thus, "strong compulsion" or physical force was not an element of the charged offenses. According to the State, testimony that Parras was a peaceful, non-violent person was therefore not admissible as evidence of a "pertinent trait of character" under HRE Rule 404(a)(1).

The State is correct that evidence of physical force was not required to prove the charged offenses here. Nevertheless, as part of its theory of the case, the State presented evidence that Parras used physical force in committing the charged offenses. The State used this evidence to bolster the CW's credibility, arguing to the jury that the CW was believable based in part on her demeanor and manner while testifying that Parras had forced himself on her, she had told him "no," and she had tried unsuccessfully to fight him off. Moreover, the State used the evidence of force to argue to the jury that Parras knowingly engaged in the charged conduct, which was an element of each of the charged offenses. For example, in her closing, the DPA argued as to Count 2: "Defendant knew what he was doing because she told him to stop, and he didn't." Similarly, the DPA argued as to Count 3: "And we know that the defendant did this knowingly because she was trying to scream. She was trying to get him off of her. She was trying to fight him." Thus, while the State was not required to prove that Parras used force in committing the charged offenses, the State's theory of the case depended on his use of force. Under these circumstances, testimony by CA that Parras was a peaceful, non-violent person would have been evidence of a "pertinent trait of

character" under HRE Rule 404(a)(1).[8/]  The Circuit Court therefore erred in concluding that such evidence was irrelevant.

Because the Circuit Court ruled on relevance grounds, it does not appear that the court evaluated whether the probative value of the excluded character evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  HRE Rule 403.  Based on this record, we cannot conclude, as the State argues, that the evidence was excludable on any of these bases as a matter of law.  On remand, if the case is retried and Parras again offers CA's opinion testimony that he is a peaceful, non-violent person, the Circuit Court will have to weigh the potential prejudicial effects of the testimony against its probative value under HRE Rule 403.

Furthermore, based on the record as a whole, we cannot conclude that the Circuit Court's error was harmless beyond a reasonable doubt.  See State v. Haili, 103 Hawaiʻi 89, 100, 79 P.3d 1263, 1274 (2003).  The only evidence available regarding the alleged sexual assaults was the conflicting testimony of the only two direct witnesses, the CW and Parras.  As a result, the respective credibility of the CW and Parras was of paramount importance, and the trial was largely a credibility contest between these two witnesses.  In this context, CA's testimony that Parras was a peaceful, non-violent person — an opinion based on her several-year relationship with him — could conceivably have boosted his credibility in the eyes of the jury.  See State v. Rivera, 62 Haw. 120, 126, 612 P.2d 526, 531 (1980) ("An accused has the right to give evidence of personal character traits associated with the basic nature of the offense with which he is charged as circumstantial evidence of his innocence, and evidence of those traits to support his credibility as a witness." (internal citations omitted)).

---

[8/]     The Circuit Court did not find, and the State does not argue, that CA was not "sufficiently acquainted" with Parras to be competent to opine as to the character traits at issue.  See Faafiti, 54 Haw. at 644, 513 P.3d at 702.

The State argues that the exclusion of this evidence was harmless, because other evidence of Parras's character was admitted. Specifically, CA was allowed to testify that Parras was never "aggressive" with her. Similarly, Parras's wife, JP, testified that Parras was "peaceful" and not "sexually aggressive."[9] Given this other testimony by CA and JP, the State contends that the precluded testimony by CA was cumulative.

We conclude otherwise for two reasons. First, evidence that Parras was not "aggressive" with CA or "sexually aggressive" with JP was not admitted for the purpose of establishing his character for peacefulness and non-violence. Indeed, the Circuit Court precluded CA from testifying even as to whether Parras was ever "violent" with her. Under HRE Rule 404(a)(1), Parras was entitled to offer evidence that he was a peaceful and non-violent person — a pertinent trait of good character — which may have carried greater weight with the jury than narrower testimony denying "aggressive" past conduct against a particular witness. See Commentary to HRE Rule 404. In short, the evidence admitted regarding Parras's character was materially incomplete.

Second, the Circuit Court improperly undermined the effectiveness of any evidence of Parras's character for peacefulness and non-violence by stating in the jury's presence during CA's testimony, "I don't believe peaceful or nonviolent [sic] is relevant to the issues in this case." We cannot conclude that CA's testimony that Parras was a peaceful, non-violent person would have been cumulative, where the only other evidence that Parras was "peaceful" was offered through the testimony of his wife — the day after the Circuit Court made this prejudicial statement. Similarly, we cannot conclude that the Circuit Court's statement did not diminish in the eyes of the jury the other admitted testimony regarding Parras's character.

Accordingly, we conclude that the Circuit Court erred in precluding CA from testifying that Parras was a "peaceful, non-violent person," and we cannot say that the error was

---

[9]      JP also testified that Parras never forced her "to have sexual contact with . . . him."

harmless beyond a reasonable doubt.  Given our conclusion, we do not reach Parras's second issue on appeal.

### III.  CONCLUSION

For these reasons, we vacate the Judgment of Conviction and Sentence, entered on February 6, 2019, by the Circuit Court of the First Circuit.  The case is remanded to the Circuit Court for further proceedings.

DATED:  Honolulu, Hawaiʻi, June 30, 2020.


On the briefs:                          /s/ Katherine G. Leonard
                                        Associate Judge
William H. Jameson, Jr.,
Deputy Public Defender,
for Defendant-Appellant.                /s/ Clyde J. Wadsworth
                                        Associate Judge
Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.