**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000843
23-DEC-2020
07:57 AM
Dkt. 60 SO**

NO. CAAP-17-0000843

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
MICAH STERLING, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-17-0000711)


SUMMARY DISPOSITION ORDER
(By: Hiraoka and Wadsworth, JJ., and
Leonard, Presiding Judge, concurring separately)

Defendant-Appellant Micah Sterling (**Sterling**) appeals from the Judgment of Conviction and Sentence (**Judgment**), entered on October 26, 2017, in the Circuit Court of the First Circuit (**Circuit Court**).[1/]  Following a jury trial, Sterling was convicted of Assault in the Third Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-712(1)(a) (2014).[2/]

On appeal, Sterling contends that the Circuit Court erred in ruling that certain hearsay statements, to which the complaining witness testified at trial, fell under the hearsay

---

[1/]    The Honorable Karen T. Nakasone presided.

[2/]    HRS § 707-712(1)(a) provides:

    (1) A person commits the offense of assault in the third degree if the person:

        (a)    Intentionally, knowingly, or recklessly causes
             bodily injury to another person[.]

exception for statements for purposes of medical diagnosis or treatment.  See Hawaiʻi Rules of Evidence (**HRE**) Rule 803(b)(4) (2002).[3/]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we affirm the Judgment for the reasons set forth below.

## I.  Background

At trial, the complaining witness, Aaron Lau (**Lau**), testified as follows.  He is a licensed registered nurse, certified emergency nurse, and trauma certified registered nurse, employed in the emergency room (**ER**) of Queens Medical Center (**QMC**).  In that capacity, he assesses and treats patients and carries out orders given by the emergency room physician.  On May 30, 2017, Lau was assigned to Rooms 4, 5, and 6, and Hallway 6 in the QMC emergency department.  Lau attended to Sterling around noon that day in Hallway 6.  Lau testified in part as follows:

> Q  BY [Deputy Prosecuting Attorney (**DPA**)]: . . . What was [Sterling] brought into the emergency room for?
>
> A    He was brought in by ambulance after EMS was activated because the patient was seen drinking and laying [sic] --
>
> [DEFENSE COUNSEL]: Objection, Your Honor.

---

[3/]    HRE Rule 803 provides, in relevant part:

> The following are not excluded by the hearsay rule, even  though the declarant is available as a witness:
>
> . . . .
>
> (b) Other exceptions.
>
> . . . .
>
> (4)    Statements for purposes of medical diagnosis or treatment.  Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

A    -- outside of --

THE COURT: Overruled.

A    -- laying [sic] outside of Pali Longs.

While in Hallway 6, Lau performed a neurological assessment of Sterling and checked his vital signs.  In response to the State's questions, Lau explained:

Q    . . . And when you say you assessed him, how did you assess him?

A    Uh, I start by performing a neurological assessment to see if the patient is confused or altered, seeing if he could tell me his name, where he was, what year it was, checking his vital signs, pupils, that kind of thing.

Q    Based on your neurological assessment, what did -- what did you determine?

A    Uh, the patient was obviously intoxicated.  He was very lethargic and obtunded.  And he would wake up briefly if I, you know, kept arousing him, but then he would quickly fall back asleep.

Q    Now could you smell the odor of alcohol?

A    I could.

. . . .

Q    How close were you to the defendant that you could smell the odor of alcohol?

A    I was right at his bedside. I had to look into his eyes, had to listen to his heart, his lungs so I was pretty much right up in his face.

Q    . . . [I]s there any other assessments that you conducted?

A    I also checked his vital signs.  I looked at his eyes, his pupils.  I listened to his heart and lungs, checked his pulse, see if he could move all of his extremities.

While Lau was assessing Sterling, Lau "tried to speak with [Sterling] to see whether [Lau] could awaken him.  Most of the time [Sterling] would just mumble kind of incoherently and then fall back asleep."  Lau stated that "[he] smelled the alcohol on [Sterling's] breath.  [Sterling's] eyes were bloodshot.  [Sterling] was uncooperative."

After Lau assessed Sterling, the ER physician ordered that Sterling be placed in a cervical collar for his safety, which Lau applied.  The physician also ordered a CAT scan for

Sterling's head and neck, which Lau arranged. Lau explained that "[a] cervical collar maintains alignment of the neck and the spine within the neck." Lau also explained that he placed the cervical collar on Sterling because "[t]he patient was obviously confused. We couldn't get a story from the patient, if he had fallen down or was just laying [sic] on the ground[,] until we could prove with the CAT scan he had no actual injury to his neck. So we placed a cervical collar." Lau further testified that the CAT scan was necessary because Sterling "was obviously confused. We didn't know if it was because of alcohol or we didn't know if he had fallen down causing him to be confused or both."

The CAT scan was not successfully completed. Lau testified as follows:

> Q [By DPA] . . . [W]as a CAT scan conducted on [Sterling]?
>
> A    Uh, it was not successfully done.
>
> Q    Okay. And why not?
>
> A    Once the patient got down to CAT scan, I received a call from the CAT scan technician stating that they were trying to --
>
> [DEFENSE COUNSEL]: Objection. Hearsay.
>
> THE COURT: Overruled.
>
> Q    You can finish.
>
> A    That they were trying to pull the patient over from the ER gurney over to the CAT scan table. But when they did that, the patient suddenly awoke and became angry at them, started yelling and spitting at them.
>
> Q    When you were on the phone with the CAT scan technician, could you hear the defendant in the background?
>
> A    I could.
>
> Q    How did you know it was his voice?
>
> A    I recognized his voice from earlier and also the CAT scan technician was saying, "Oh, you hear him yelling back there?"
>
> [DEFENSE COUNSEL]: Objection. Hearsay.
>
> THE COURT: Overruled.
>
> . . . .

Q      What kind of tone of voice was [Sterling] using?

A      He was obviously very angry.

Sterling was returned to the ER, where Lau observed that the cervical collar had been removed.  Lau also observed, from about five feet away, that Sterling was getting more agitated and attempting to undo his pants.  Based on his experience, Lau believed that Sterling "obviously needed to urinate, but he was getting very frustrated because he was drunk and he couldn't figure out how to do it."  Lau grabbed a pair of gloves and a urinal bottle and then approached Sterling and said, "I'm Aaron here, your nurse in the emergency.  I'm going to help you with the urinal bottle."  Lau had not touched or reached for Sterling, when Sterling suddenly sat up, turned toward Lau, and punched him with a closed right fist on the left side of Lau's "throat-neck area."  Lau "immediately felt pain there" that lasted "[a]bout 20 minutes."  As Sterling continued to get more agitated, Lau grabbed both of Sterling's wrists and pushed him back down onto the ER gurney.  Shortly after, other ER nurses, technicians, and physicians came to assist Lau.

Sterling also testified at trial, as follows.  On May 30, 2017, he went to the Safeway by the Long's near the Pali to get lunch.  He bought a sandwich and sat down outside to eat it.  "There was a guy that came up to [Sterling,] . . . asked [him] for some food, for some of [his] sandwich, and some money."  When Sterling said "no," the man started yelling at him, they got into an argument, and the man started hitting Sterling.  When asked what happened next, Sterling testified:  "I don't know.  I must have got knocked out or -- or something.  That's all I remember about that."  Sterling next "remember[ed] some people were asking me if I was okay and I was laid out on the ground."  Sterling did not know any of the people and assumed he was in "the same spot."[4]

---

[4]      Sterling later testified that he did not recall being taken to QMC, put on a gurney, "hooked up with needles," placed in a cervical collar, or transported for a CAT scan.

When asked what happened next, Sterling testified: "I woke up and there was a guy with my penis in his hand, and he was telling me that he was going to -- he was grabbing my -- my privates and he was going to help me. And I said, [']No, get away from me,['] and I pushed him away." Sterling did not know who the person was, where he (Sterling) was, or what was happening. Sterling stated that he fell back asleep. Sometime later, "[he] woke up and there was a police officer and they told [him] that [he] was being taken to jail pretty much."

As to whether he was drinking that day, Sterling testified as follows:

Q    And were you drinking that day?

A    I don't recall.

Q    You don't recall if you were drinking?

A    I don't remember it.

Q    You don't remember if you were drinking?

A    No.

Drew Matsuura (**Matsuura**) also testified at trial. On May 30, 2017, he was working as a medical scribe in the ER at QMC. At around 1 p.m. that day, Matsuura was sitting at his scribe station, located between Rooms 5 and 6, near Hallway 6, in the ER. From where he was sitting, Matsuura eventually saw Lau tending to Sterling. Matsuura was 10 to 15 feet away from Lau and Sterling, the area was well lit, and nothing blocked Matsuura's view. While Lau was at Sterling's bedside, Matsuura saw Sterling sit up and, "kind of out of nowhere," turn and punch Lau with a closed fist in the "left jaw/neck area." Matsuura testified that he did not see Lau touch Sterling in the groin area or in any inappropriate way before Sterling hit Lau.

## II.  Discussion

Sterling contends that the Circuit Court erred in allowing Lau to testify to: (1) a statement made by an unidentified declarant that Sterling had been "seen drinking . . . outside of Pali Longs" (**Statement 1**); and (2) statements made by the CAT scan technician regarding Sterling's behavior and

6

demeanor during the attempted CAT scan, *i.e.*, that Sterling "became angry" and "started yelling and spitting at them" (**Statement 2**). Sterling argues that in both instances, the Circuit Court erroneously ruled that the statements were admissible under the HRE Rule 803(b)(4) hearsay exception for statements for purposes of medical diagnosis or treatment.[5/]

We conclude that the Circuit Court did not err in overruling Sterling's hearsay objection to Statement 2. While the court did not state the basis for its ruling, Lau's testimony established that the challenged statements fell under the hearsay exception for present sense impressions. See HRE Rule 803(b)(1);[6/] see also State v. Melendez, 146 Hawaiʻi 391, 397, 463 P.3d 1048, 1054 (2020) (an appellate court may affirm a judgment on any supporting ground in the record (quoting State v. Fukagawa, 100 Hawaiʻi 498, 506-07, 60 P.3d 899, 907-08 (2002))). Specifically, Lau testified to statements made by the CAT scan technician describing Sterling's behavior while the technician was perceiving the behavior or immediately thereafter. Indeed,

---

[5/] During the testimony at issue, the Circuit Court did not state the basis for overruling Sterling's hearsay objections. Prior to opening statements, however, Sterling objected to the following anticipated hearsay testimony by Lau, as contained in his written statement form to the police: "[A]t about 12:13 the patient was assigned to Hallway 6 after brought in by EMS due to being found laying in front of Pali Longs and was seen drinking alcohol per the triage note." At that time, the Circuit Court ruled: "That is what the court is going to allow in. . . . These are statements that Mr. Lau is reporting, and he's allowed to report under that hearsay exception[,]" referring to HRE Rule 803(b)(4). After further discussion, the court clarified: "If the State can lay a foundation as to how this testimony is reasonably pertinent to the diagnosis and treatment, then it comes in in its entirety under . . . 803-4."

[6/] HRE Rule 803 provides, in relevant part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (b) Other exceptions.
>
> (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.

Lau testified that he could hear Sterling in the background when the technician asked, "Oh, you hear him yelling back there?"

Even if we assume that the Circuit Court erred in admitting Statements 1 and 2,[7/] we conclude that on the entire record, such error was harmless beyond a reasonable doubt.  See State v. Jones, 148 Hawaiʻi 152, 170, 468 P.3d 166, 184 (2020) ("Erroneously admitted evidence is evaluated under the harmless beyond a reasonable doubt standard."  (quoting State v. Matsumoto, 145 Hawaiʻi 313, 327, 452 P.3d 310, 324 (2019)) (internal quotation marks omitted)).  In evaluating whether an erroneous admission of evidence is harmless, the supreme court has explained:

> [E]rror is not to be viewed in isolation and considered purely in the abstract.  It must be examined in light of the entire proceedings and given the effect to which the whole record shows it is entitled.  In that context, the real question becomes whether there is a *reasonable possibility that error might have contributed to conviction*.  If there is such a reasonable possibility in a *criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside*.

State v. McCrory, 104 Hawaiʻi 203, 210, 87 P.3d 275, 282 (2004) (quoting State v. Gano, 92 Hawaiʻi 161, 176, 988 P.2d 1153, 1168 (1999)); see State v. Lora, 147 Hawaiʻi 298, 310, 465 P.3d 745, 757 (2020).

To establish that Sterling committed Assault in the Third Degree, the State was required to prove that Sterling intentionally, knowingly, or recklessly caused bodily injury to Lau.  See HRS § 707-712(1)(a).  Here, the State produced "overwhelming and compelling evidence tending to show [Sterling] guilty beyond a reasonable doubt."  State v. Texeira, 147 Hawaiʻi 513, 538, 465 P.3d 960, 985 (2020) (quoting State v. Rivera, 62 Haw. 120, 127, 612 P.2d 526, 532 (1980)).  Lau and Matsuura both testified that Sterling sat up in bed, turned, and punched Lau with a closed fist in the neck-throat area.  In his own testimony, Sterling admitted pushing Lau.  In addition, Lau's

---

[7/]  We do not decide whether Statement 1 fell under the hearsay exception for statements for purposes of medical diagnosis or treatment.

unrefuted testimony established that he sustained bodily injury, *i.e.*, physical pain, during the incident. See HRS § 707-700. The jury could reasonably have inferred based on the overwhelming evidence of Sterling's actions that he intentionally, knowingly, or recklessly caused bodily injury to Lau.

Sterling argues that the admission of Statement 1 was not harmless because it supported Lau's opinion that Sterling was intoxicated at the hospital, which in turn supported Lau's testimony that Sterling had been uncooperative and had struck Lau. Sterling further contends that the admission of Statement 1 "demeaned [his] credibility as it contradicted his claim that he did not recall drinking that day[.]"[8/]

To the extent that evidence of Sterling's "drinking" on the day of the incident, as referenced in Statement 1, affected his or Lau's credibility, the record reveals that the jury heard compelling independent evidence of such drinking from Lau. See State v. Crisostomo, 94 Hawaiʻi 282, 290, 12 P.3d 873, 881 (2000) (ruling that any error in admitting alleged hearsay statements was harmless because they were cumulative of other admissible testimony). In examining Sterling, Lau smelled alcohol on his breath; Lau also observed that Sterling's eyes were bloodshot, he was lethargic, obtunded and uncooperative, and he was falling asleep and mumbling incoherently. Later, Lau observed that

---

[8/] Sterling also asserts that Statement 1 constituted evidence of a prior, criminal, bad act (drinking in public), and the jury could have considered it propensity evidence. This argument was not raised below and is thus deemed waived. See State v. Gonzalez, 128 Hawaiʻi 314, 317, 288 P.3d 788, 791 (2012) (noting that failure to properly raise issue at trial level precludes party from raising that issue on appeal (quoting State v. Kikuta, 125 Hawaiʻi 78, 89, 253 P.3d 639, 650 (2011))); HRE Rule 103(a)(1). Similarly, Sterling now contends that the admission of Statement 1 violated his right to confrontation and "may have influenced [his] decision to testify." However, Sterling did not raise these objections when Statement 1 was offered during trial, and they are thus deemed waived See Kobashigawa v. Silva, 129 Hawaiʻi 313, 322, 300 P.3d 579, 588 (2013). In addition, Sterling did not establish on the record that he decided to testify at least in part based on the Circuit Court's ruling as to Statement 1. Cf. State v. Schnabel, 127 Hawaiʻi 432, 439, 450, 279 P.3d 1237, 1244, 1254 (2012) (concluding that the trial court's error in admitting evidence infringed on the defendant's right to testify, where defense counsel stated on the record that the defendant had decided not to testify based in part on the court's ruling). Given the record and the circumstances of this case (see infra), we further conclude there was no plain error.

Sterling was getting more agitated while attempting to undo his pants to urinate, and when Lau tried to assist Sterling, Sterling struck him. Sterling did not deny that he was drinking on the day of the incident; rather, he testified that he did not recall. Considering the entire record in this case, we conclude there is no reasonable possibility that the admission of Statement 1 contributed to Sterling's conviction.

Sterling argues that the admission of Statement 2 was not harmless because it supported the credibility of Lau's account of Sterling's angry and violent behavior and thus Lau's claim that Sterling "had struck him unprovoked." Sterling further asserts that the admission of Statement 2 undermined his credibility by contradicting his claim that "he was basically unconscious through most of his time at the hospital and that the only reason he reacted adversely to Lau was because Lau was touching his penis."[9]

The record reveals, however, that the jury heard compelling independent evidence of Sterling's behavior from Lau and Matsuura, both of whom testified that Sterling had punched Lau with a closed fist in the neck-throat area. See Crisostomo, 94 Hawaiʻi at 290, 12 P.3d at 881. In addition, Lau testified that he had not touched or reached for Sterling when Sterling suddenly sat up and struck Lau. Matsuura corroborated Lau's account, stating that he did not see Lau touch Sterling in the groin area or in any inappropriate way before Sterling hit Lau. Considering the entire record, we conclude there is no reasonable possibility that the admission of Statement 2 contributed to Sterling's conviction.

Accordingly, any error of the Circuit Court in admitting Statements 1 and 2 was harmless beyond a reasonable doubt.

---

[9] Sterling also argues that Statement 2 constituted evidence of "a prior bad act that was admitted substantively without a limiting instruction[,]" and the admission of Statement 2 violated his right to confrontation. Neither argument was raised below and is thus deemed waived. Given the record and the circumstances of this case (see infra), we further conclude there was no plain error.

### III. Conclusion

For these reasons, we affirm the Judgment of Conviction and Sentence, entered on October 26, 2017, in the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, December 23, 2020.


On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Associate Judge


/s/ Clyde J. Wadsworth
Associate Judge


CONCURRING OPINION BY LEONARD, PRESIDING JUDGE

I concur in the result.


/s/ Katherine G. Leonard
Presiding Judge